**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| CRAIG THORNER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TEAMVIEWER US, INC.,<br><br>Defendant. | **Case No.:**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Craig Thorner ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, alleges as follows:

**I. INTRODUCTION AND NATURE OF THE ACTION**

1. Defendant TeamViewer US, Inc. ("TeamViewer" or "Defendant") sold "perpetual" TeamViewer licenses at a premium to consumers who wanted long-term, remote-from-anywhere access without recurring subscription fees. After taking those upfront payments, Defendant later withdrew internet-based connectivity for legacy perpetual versions by removing them from Defendant's server/network ecosystem, leaving purchasers with a materially diminished product unless they pay again for a subscription or upgrade.

2. TeamViewer marketed and sold "perpetual" licenses at substantial upfront prices as the paid-up alternative to recurring subscription fees. Consumers paid a price premium to avoid ongoing monthly/annual payments and to obtain continuing remote-access functionality.

1

3.      Years later, after shifting its commercial model toward subscription licensing, TeamViewer announced and implemented an end-of-life/end-of-support lifecycle action for TeamViewer Versions 11 and 12 that goes beyond merely ending updates or customer service: TeamViewer removed these versions from its network ecosystem such that users of those versions were cut off from internet-based remote sessions through Defendant's server/network infrastructure.

4.      This is materially different from a typical "unsupported software" scenario. TeamViewer's product is designed to operate through TeamViewer-controlled server services that enable device identity, authentication, session negotiation, and NAT/firewall traversal for remote sessions over the public internet. When TeamViewer unilaterally denies legacy versions access to its server/network infrastructure, the software becomes unable to perform its essential intended use.

5.      TeamViewer's attempt to characterize the resulting "LAN-only" connectivity as a continued benefit is misleading and commercially unreasonable. LAN-only connectivity is not the bargain for which consumers paid a premium to access computers from outside their network (e.g., from travel, remote work, offsite troubleshooting).

6.      TeamViewer has not provided meaningful compensation or a fair transition remedy commensurate with the perpetual-license price premium (e.g., partial refunds, credits, or non-coercive conversion relief), thereby causing purchasers to suffer benefit-of-the-bargain damages, diminution in value, and replacement/transition costs.

7.      Plaintiff brings this action seeking damages and restitution/disgorgement on behalf of a nationwide class of perpetual-license purchasers, including under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), because TeamViewer is based in

Florida and the commercialization, licensing, and lifecycle decisions to discontinue legacy perpetual-license use over TeamViewer's network were made, implemented, and directed from Florida.

## II. JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (a) the proposed Class consists of at least 100 members; (b) minimal diversity exists; and (c) the amount in controversy exceeds $5,000,000 exclusive of interest and costs.

9. This Court has personal jurisdiction over Defendant TeamViewer US, Inc. because it is a Florida corporation with its principal place of business in Largo, Florida, transacts business in Florida and nationwide, and made and implemented the licensing and lifecycle decisions at issue from Florida.

10. Venue is proper in this District under 28 U.S.C. § 1391 because Plaintiff resides in this District, purchased and used TeamViewer in this District, suffered injury in this District, and Defendant transacts business in this District.

## III. PARTIES

11. Plaintiff Craig Thorner is a Florida consumer residing in Palm Beach County, Florida.

12. Defendant TeamViewer US, Inc. is a Florida corporation headquartered in Largo, Florida, and is the TeamViewer contracting entity for customers located in the United States and the Americas for many TeamViewer products and services.

13. TeamViewer US, Inc. is part of the broader TeamViewer corporate group, which includes TeamViewer SE, a German-based entity.

14. At all relevant times, Defendant marketed, sold, licensed, or profited from TeamViewer perpetual licenses in the United States and implemented, directed, or caused the lifecycle and infrastructure decisions that cut off internet remote sessions for legacy versions.

## IV. FACTUAL ALLEGATIONS

### A. TeamViewer's Core Function Depends on TeamViewer-Controlled Server/Network Infrastructure

15. TeamViewer is marketed and sold as remote-access software that allows users to access computers "from anywhere," including when the user and the host computer are on different networks and separated by distance.

16. In ordinary consumer use, host computers sit behind routers and firewalls using NAT that blocks unsolicited inbound connections. TeamViewer is designed so consumers do not need to configure port-forwarding, VPNs, or custom firewall rules.

17. To accomplish remote connectivity, TeamViewer relies on TeamViewer-controlled infrastructure for (among other things) device identity, authentication, rendezvous, session negotiation, and-in many cases-relay services when direct peer-to-peer connections cannot be established due to network conditions.

18. Because TeamViewer's servers and network infrastructure are integrated into the product's core function for remote sessions over the internet, TeamViewer's decision to remove legacy versions from that infrastructure can eliminate the intended use of perpetual licenses regardless of whether the local software still "runs."

### B. TeamViewer Sold Perpetual Licenses as a Premium Alternative to Subscription Payments

19. TeamViewer historically offered perpetual licenses at substantial upfront prices, marketed and understood as a paid-up alternative to recurring subscription fees.

20.    The 2017-era TeamViewer end-user licensing terms recognized "perpetual software licenses" as a distinct category and addressed server-dependent services as part of the TeamViewer ecosystem.

21.    The same licensing framework distinguished term or subscription-based licenses by stating those rights of use are limited to the term specified in the order-underscoring that perpetual licenses were not sold as time-limited rights.

22.    In addition to contractual framing, TeamViewer's pricing structure induced consumers to pay a price premium for perpetual licenses to avoid recurring subscription payments and to secure continuing remote access.

**C. Plaintiff's Purchases, Reliance, and Injury**

23.    Plaintiff purchased TeamViewer based on TeamViewer's sale of perpetual licensing as a paid-up alternative to subscriptions.

24.    On or about January 23, 2017, Plaintiff purchased a TeamViewer 12 Business license for $849.00.

25.    On or about August 18, 2017, Plaintiff upgraded from TeamViewer 12 Business to TeamViewer 12 Corporate for $1,950.00.

26.    Plaintiff paid approximately $2,799.00 in total for TeamViewer perpetual rights, a substantial premium compared to subscription alternatives.

27.    Plaintiff purchased the perpetual license because he needed reliable remote-from-anywhere access and reasonably believed TeamViewer would not later extinguish that intended use by cutting off access to TeamViewer's server/network infrastructure and forcing him to pay again.

5

**D. TeamViewer's Lifecycle Action Functionally Cuts Off Internet Remote Sessions**

28.     TeamViewer later announced and implemented an end-of-support/lifecycle action for TeamViewer Versions 11 and 12 under which the legacy versions were removed from TeamViewer's network ecosystem and users running those versions were cut off from internet remote sessions through TeamViewer's server/network infrastructure, leaving only materially diminished "LAN-only" connectivity unless purchasers paid again for a subscription or upgrade.

29.     TeamViewer has represented that LAN connections remain possible, which underscores that internet remote sessions depend on TeamViewer's server/network infrastructure and that TeamViewer chose to deny legacy versions access to that infrastructure.

30.     As a result, perpetual license holders are deprived of the essential benefit of their bargain-remote access over the internet-and are forced to pay again (e.g., subscriptions/upgrades) or incur replacement costs to regain remote-from-anywhere functionality.

**E. "LAN-Only" Is Not the Bargain; TeamViewer's Conduct Creates Classwide Damages**

31.     "LAN-only" connectivity is not the product consumers paid a premium to obtain. TeamViewer is purchased to access devices outside the user's network without complex network configuration.

32.     TeamViewer's conduct causes classwide damages including benefit-of-the-bargain loss, diminution in value, and replacement/transition costs.

**F. Widespread Consumer Complaints Confirm the Harm Is Not Isolated**

33.     Defendant's decision to disable internet-based connectivity for certain "perpetual" license versions has generated widespread consumer complaints and public discussion from other perpetual-license purchasers describing the same loss of core "remote-from-anywhere" functionality and resulting pressure to pay again for a subscription or upgrade.

6

34.     In multiple widely viewed public threads, customers report receiving notice that older versions will no longer be able to connect via Defendant's infrastructure and that only "LAN-only" connections would remain available—eliminating the defining feature for which perpetual-license purchasers paid a premium.

35.     Those discussions further reflect a common understanding among purchasers that "perpetual" was marketed and understood to mean more than simply retaining the right to run a local executable; purchasers understood they were buying continuing remote-access use over the internet as the essential purpose of the product.

36.     The volume and consistency of these consumer complaints and public discussions corroborate Plaintiff's experience and support that Defendant's conduct is common, recurring, and capable of classwide proof.[1]

## V. CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following classes:

Nationwide Class (FDUTPA and common-law/equitable relief where applicable): All persons and entities in the United States who purchased a perpetual license to TeamViewer Version 11 or Version 12.

Multi-State Class (consumer-statute count): All persons and entities in Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Florida, Illinois, Kansas, Kentucky, Maryland, Massachusetts, Michigan, New Jersey, North Carolina, Oregon, Pennsylvania, Rhode Island, Texas, Virginia, and Washington who purchased a perpetual license to TeamViewer Version 11 or Version 12.

---

[1] *See* https://www.reddit.com/r/teamviewer/comments/1pwle38/psa_teamviewer_perpetual_licenses_going_lanonly/; https://www.reddit.com/r/LinusTechTips/comments/1pjy1t9/teamviewer_killing_our_version_12_perpetual/; https://www.reddit.com/r/teamviewer/comments/1mq52pt/teamviewer_and_the_perpetual_license_paid_like/; https://www.reddit.com/r/teamviewer/comments/1p7vtce/teamviewer_is_extending_perpetual_licenses_after/.

38. In the alternative, if the Court determines FDUTPA cannot be applied on a nationwide basis as pleaded herein, Plaintiff pleads a Florida Subclass:

Florida Subclass (Alternative): All persons and entities in Florida who purchased a perpetual license to TeamViewer Version 11 or Version 12.

39. Excluded from the Classes are Defendant, its officers, directors, employees, affiliates, and the Court and its staff.

40. Numerosity: The Classes are so numerous that joinder is impracticable. TeamViewer sold perpetual licenses nationwide to thousands of purchasers.

41. Commonality: Common questions include whether (a) TeamViewer sold perpetual licenses as premium paid-up alternatives; (b) TeamViewer's remote access over the internet depends on TeamViewer's server/network infrastructure; (c) TeamViewer removed Versions 11/12 from that infrastructure; (d) "LAN-only" is not a reasonable substitute; (e) Defendant's conduct is unfair/deceptive; and (f) damages can be measured on a classwide basis.

42. Typicality: Plaintiff's claims are typical because he purchased a perpetual license and suffered the same injury as the Classes-loss of intended remote-from-anywhere use and economic harm.

43. Adequacy: Plaintiff will fairly and adequately protect the Classes, has no antagonistic interests, and is represented by experienced class counsel.

44. Predominance and Superiority: Common issues predominate and class treatment is superior because individual litigation would be inefficient and Defendant would retain the benefits of wrongdoing absent classwide adjudication.

## VI. CAUSES OF ACTION

### COUNT I
Violation of Florida Deceptive and Unfair Trade
Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq.
(On behalf of Plaintiff and the Nationwide Class; alternatively, the Florida Subclass)

45.     Plaintiff incorporates by reference the allegations above as though fully set forth herein.

46.     Plaintiff and the Class are "consumers" within the meaning of FDUTPA, and Defendant is engaged in "trade or commerce" within the meaning of FDUTPA, because it marketed, sold, licensed, and profited from TeamViewer software and the associated server/network services required for remote sessions over the internet.

47.     FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

48.     FDUTPA applies because Defendant's unfair and deceptive acts and practices emanated from Florida and were directed from Florida: Defendant is based in Florida, and the licensing and lifecycle/infrastructure decisions and implementation actions that discontinued legacy perpetual-license use over TeamViewer's network infrastructure were made, implemented, and/or directed from Florida and caused nationwide harm.

49.     Defendant's acts and practices were deceptive because Defendant sold "perpetual" licenses as paid-up alternatives to subscriptions, inducing consumers to pay substantial premiums for continuing remote-from-anywhere access, while later implementing a server/infrastructure cutoff that eliminates internet remote sessions for legacy versions-thereby depriving consumers of the very benefit that made the "perpetual" purchase valuable.

9

50. Defendant's acts and practices were unfair because they offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers-particularly where Defendant retained the premium paid for perpetual licenses while functionally terminating the licenses' core intended use through unilateral control of essential server/network infrastructure.

51. Defendant's unfair and deceptive practices were likely to mislead reasonable consumers acting reasonably under the circumstances, and did mislead Plaintiff and the Class.

52. Defendant's representations and omissions were material because they concerned the central purpose of the transaction: ongoing remote-from-anywhere access without recurring payments, and the dependency of that access on TeamViewer-controlled server/network services that Defendant could later deny.

53. Plaintiff and Class Members purchased perpetual licenses in reliance on Defendant's representations and the reasonable understanding that the paid-up license would continue to provide the core intended use (remote-from-anywhere sessions over the internet) without requiring additional recurring payments.

54. As a direct and proximate result of Defendant's FDUTPA violations, Plaintiff and the Class suffered actual damages, including but not limited to: the difference between the value promised and the value received; price-premium damages; diminution in value; and replacement/transition costs.

55. Defendant's unfair and deceptive acts were the producing cause of Plaintiff's and the Class's damages.

56. Plaintiff seeks all relief available under FDUTPA, including actual damages, attorneys' fees and costs where available, and restitution/disgorgement to the extent permitted.

**COUNT II**
Violations of the Consumer Protection Statutes of Other
States and the District of Columbia
(On behalf of the Multi-State Class)

57.     Plaintiff incorporates by reference and realleges each and every allegation contained in the preceding paragraphs of this Complaint as if fully set forth herein.

58.     The consumer protection statutes of the Multi-State Class jurisdictions prohibit deceptive, unfair, and unconscionable acts and practices in the conduct of trade or commerce. These statutes include, but are not limited to:

- Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521 et seq.;

- California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. and Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq.;

- Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101 et seq.;

- Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a et seq.;

- Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §§ 2511 et seq.;

- District of Columbia Consumer Protection Procedures Act, D.C. Code §§ 28-3901 et seq.;

- Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 et seq.;

- Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 et seq.;

- Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623 et seq.;

- Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110 et seq.;

- Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 et seq.;

- Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 1 et seq.;

- Michigan Consumer Protection Act, Mich. Comp. Laws §§ 445.901 et seq.;

- New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 et seq.;

11

- North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 et seq.;

- Oregon Unlawful Trade Practices Act, Or. Rev. Stat. §§ 646.605 et seq.;

- Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. §§ 201-1 et seq.;

- Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws §§ 6-13.1-1 et seq.;

- Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41 et seq.;

- Virginia Consumer Protection Act, Va. Code Ann. §§ 59.1-196 et seq.; and

- Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010 et seq.

59.    The conduct of Defendant alleged herein constitutes recurring deceptive, unfair, and unconscionable acts and practices in violation of the consumer protection statutes of the Multi-State Class jurisdictions, and as such, Plaintiff and the members of the Multi-State Class seek monetary damages, including actual, compensatory, and statutory damages where available under these statutes.

60.    Defendant misleadingly, inaccurately, and deceptively presented the TeamViewer perpetual licenses to consumers in the Multi-State Class jurisdictions through uniform representations and net impressions that purchasers were obtaining a paid-up, perpetual right to continue using TeamViewer for its essential intended purpose-remote access over the internet-when in fact Defendant retained and later exercised unilateral control over the server/network infrastructure necessary for such internet remote sessions and cut off that essential functionality for legacy perpetual versions.

61.    Additionally, Defendant failed to clearly disclose at the time of sale, in a conspicuous manner, that Defendant could later unilaterally deny perpetual license holders

12

access to the TeamViewer server/network infrastructure required for internet remote sessions-thereby rendering the "perpetual" license materially diminished in value or unusable for its intended purpose outside a local network.

62.     Defendant's improper consumer-oriented conduct is misleading in a material way in that it, inter alia, induced Plaintiff and the members of the Multi-State Class to purchase and/or pay a premium for Defendant's perpetual licenses when they otherwise would not have.

63.     Defendant made and disseminated its representations and omissions willfully, wantonly, and/or with reckless disregard for the truth and consumers' reasonable expectations regarding the meaning and value of a paid-up "perpetual" license.

64.     Defendant's material misrepresentations and omissions were substantially uniform in content, presentation, and impact upon consumers at large in the Multi-State Class jurisdictions. Moreover, Plaintiff and all members of the Multi-State Class who purchased the perpetual licenses were exposed to Defendant's material misrepresentations and omissions.

65.     Plaintiff and the members of the Multi-State Class viewed and relied on the materially misleading representations and net impressions described herein.

66.     Plaintiff and the members of the Multi-State Class expected that the perpetual licenses they purchased would provide continuing remote access over the internet consistent with Defendant's "perpetual" licensing model and premium price.

67.     Plaintiff and the members of the Multi-State Class have been injured inasmuch as the perpetual licenses they received were not as represented and were deprived of their essential intended use.

68.     Accordingly, Plaintiff and the members of the Multi-State Class received less than they bargained for and/or paid and would not have purchased the perpetual licenses, or would

have paid significantly less, if they knew the truth concerning Defendant's ability and intention to later cut off internet remote sessions for legacy perpetual versions by denying access to the TeamViewer network ecosystem.

69.     Plaintiff and the members of the Multi-State Class seek rescission/restitution (full or partial refunds) for purchases of the perpetual licenses, or, in the alternative, price-premium/benefit-of-the-bargain damages.

70.     As a result of Defendant's deceptive, unfair, and unconscionable practices, Plaintiff and the members of the Multi-State Class are entitled to monetary and compensatory damages, interest, attorneys' fees and costs, and statutory damages where provided under the respective consumer protection statutes.

**COUNT III**
Breach of Contract
(On behalf of Plaintiff and the Nationwide Class)

71.     Plaintiff incorporates by reference the allegations above as though fully set forth herein.

72.     Plaintiff and the Class entered into contracts with Defendant and/or its affiliates, including through purchase orders/invoices, clickwrap/online contracting, and the operative end-user licensing terms presented at sale and/or activation for perpetual licenses.

73.     Plaintiff performed all conditions, covenants, and promises required on his part, including payment of the full premium purchase price for a perpetual license.

74.     Under the parties' contracts, Plaintiff and Class Members purchased and Defendant and/or its affiliates sold a paid-up "perpetual" license to TeamViewer for its core intended use—remote-from-anywhere access over the internet—not merely the right to run a local executable on a single network.

75.     Defendant's server/network infrastructure was an integral component of that bargain because it enables the authentication, session negotiation, and connectivity required for internet remote sessions in typical consumer environments behind NAT and firewalls.

76.     Defendant breached the contracts by depriving Plaintiff and the Class of the essential benefit of their bargains-usable internet-based remote sessions as the core intended use of TeamViewer-by discontinuing and denying legacy versions access to the TeamViewer server/network infrastructure necessary to perform remote sessions over the internet.

77.     Defendant's breach includes, at minimum, exercising control over essential server/network services in a manner that renders the paid-up perpetual license unable to perform its intended function for typical consumer use.

78.     Defendant's breach was material and deprived Plaintiff and the Class of the value of their bargains.

79.     Plaintiff and the Class suffered damages as a direct and proximate result of Defendant's breach, including benefit-of-the-bargain damages, diminution in value, and replacement/transition costs.

## COUNT IV
Breach of the Implied Covenant of Good Faith and Fair Dealing
(On behalf of Plaintiff and the Nationwide Class)

80.     Plaintiff incorporates by reference the allegations above as though fully set forth herein.

81.     Every contract contains an implied covenant of good faith and fair dealing requiring parties to perform in good faith and not to take actions that destroy or injure the other party's right to receive the fruits of the contract.

82.     Defendant retained discretion and exclusive control over the server/network infrastructure and lifecycle policies required for TeamViewer's remote sessions over the internet.

83.     Defendant exercised that discretion in bad faith and/or in an objectively unreasonable manner by removing legacy perpetual-license versions from the TeamViewer network ecosystem, thereby destroying the core benefit of the paid-up perpetual bargain and steering legacy perpetual customers into paying again.

84.     Defendant's conduct was not a good-faith implementation of the contract's purposes, but rather a commercially opportunistic use of unilateral control over essential infrastructure to extract additional payments from customers who already paid a premium.

85.     Plaintiff and the Class suffered damages as a direct and proximate result.

## COUNT V
### Unjust Enrichment (Pled in the Alternative)
### (On behalf of Plaintiff and the Nationwide Class)

86.     Plaintiff incorporates by reference the allegations above as though fully set forth herein.

87.     Plaintiff and the Class conferred a substantial benefit on Defendant by paying premium upfront prices for perpetual licenses.

88.     Defendant knowingly accepted and retained these benefits.

89.     It would be inequitable for Defendant to retain the benefits of premium perpetual-license payments while stripping the essential value of those purchases by unilaterally denying access to the server/network infrastructure required for internet remote sessions.

90.     Plaintiff and the Class are entitled to restitution and disgorgement of the amounts by which Defendant was unjustly enriched.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests that the Court:

A. Certify this action as a class action under Rule 23 and appoint Plaintiff as Class Representative and undersigned counsel as Class Counsel;

B. Award actual damages in amounts to be determined at trial;

C. Award restitution and disgorgement of all amounts unjustly retained by Defendant;

D. Award reasonable attorneys' fees and costs as permitted by applicable law;

E. Award pre-judgment and post-judgment interest as permitted by law; and

F. Grant such other and further relief as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 3, 2026

/s/ *Anthony J. Russo*
Anthony J. Russo, Esq.
Florida Bar No. 43109
The Russo Firm
1001 Yamato Road, Suite 106
Boca Raton, FL 33431
T: 844-847-8300
E: anthony@therussofirm.com

*Counsel for Plaintiff*